UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JOSE GRACIANO, SR., | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Case No. 22-cv-12024-DJC |
| WYNN MA, LLC, D/B/A ENCORE BOSTON HARBOR, DOUGLAS WILLIAMS, CLIFF PERRY, and GEORGE MAGEE, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                     **January 28, 2025**

### I.   Introduction

Plaintiff Jose Graciano, Sr. ("Graciano"), who is proceeding *pro se*, has filed this lawsuit against Defendants Wynn MA, LLC d/b/a Encore Boston Harbor ("Encore"), Douglas Williams ("Williams"), Cliff Perry ("Perry") and George Magee ("Magee") (collectively, "Defendants") alleging race discrimination under Title VII and 42 U. S. C. § 1981 (Counts I and IV) and retaliation under the same federal statutes (Counts II and V).[1]  D. 24.  Both Graciano, D. 84, and Defendants, D. 108, have moved for summary judgment.  For the reasons stated below, the Court DENIES Graciano's motion, D. 84, and ALLOWS Defendants' motion.  D. 108.[2]

---

[1] The Court has previously dismissed Counts III and VI of Graciano's original complaint. D. 19.

[2] Since the Court heard the parties' arguments on their motions for summary judgment, D. 135, Graciano has filed a series of motions. D. 136; D. 139; D. 140; D. 141; D. 144; D. 146; D. 150; D. 157.  Graciano's pre-hearing filing of motions necessitated an earlier order, entered on July 17, 2024, that until the Court resolved the pending summary judgment motions, "no motion

1

## II.  Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the outcome of the suit under applicable law." Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000). The movant bears the burden of demonstrating the absence of a genuine issue of material fact. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); Celotex v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-moving party may not rest on the allegations or denials in its pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), but must come forward with specific admissible facts showing that there is a genuine issue for trial. Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009). "When deciding cross-motions for summary judgment, the court must consider each motion separately, drawing inferences against each movant in turn." Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997).

---

may be filed in this matter without first seeking leave of Court to do so" and the Court would "strike any motion that does not indicate that the moving party has complied with the duty to confer with the other side before filing same." D. 133. To the extent that Graciano now has moved for reconsideration of prior rulings on motions to strike, D. 136, D. 140, the Court DENIES these two motions for the reasons stated in the prior denials. The Court also DENIES Graciano's motion to waive the local counsel requirements under Local Rule 83.5.3, D. 150, as this Court had previously denied a similar request on July 5, 2023 as to the same attorney, D. 34, and this motion, is in essence, a motion to reconsider its prior ruling. D. 151 at 1. Accordingly, the Court denies D. 150 at least for the reasons previously articulated in D. 34. The Court addresses the remainder of Graciano's motions elsewhere in this Memorandum and Order.

.

### III.  Factual Background

The following facts are undisputed[3] unless otherwise noted and are drawn from the parties' statement of facts, D. 84 (containing Graciano's statement of undisputed facts); D. 92 (Defendants' response to Graciano's statement of undisputed facts); D. 110 (Defendants' statement of facts), and accompanying documents.[4]

Graciano is of Latino descent.  D. 84 at 6 ¶ 8; D. 92 at 12 ¶ 8; D. 110 ¶ 1.  On February 14, 2019, he accepted an offer to join Encore as a casino services supervisor beginning on May 28,

---

[3] Graciano failed to file a response to the Defendants' statement of material facts as required.  Accordingly, Defendants' statement of material facts, D. 110, is deemed admitted.  Stonkus v. City of Brockton Sch. Dep't, 322 F.3d 97, 102 (1st Cir. 2003) (providing that "material facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by the opposing parties unless controverted by the statement required to be served by opposing parties") (quoting D. Mass. L.R. 56.1); McClinton v. Suffolk Cnty. Jail, 569 F. Supp. 3d 71, 74 (D. Mass. 2021) (explaining that "pro se status does not excuse a party from complying with procedural and substantive law").

After Defendants filed their motion for summary judgment, D. 108 (filed on May 24, 2024) Graciano moved to strike it, D. 116, which this Court denied.  D. 129 (entered on July 16, 2024).  Graciano filed no timely opposition to Defendants' motion for summary judgment.  On August 8, 2024, after the motion hearing on the summary judgment motions, Graciano moved for leave to file a response to Defendants' motion, asking the Court to consider attachments to that motion. D. D. 139.  Although the Court has considered Graciano's arguments in support of his own motion for summary judgment and in opposition to Defendants' summary judgment motion as presented in his affirmative motion papers and as articulated at the motion hearing (and which are now articulated again in D. 139), the Court DENIES D. 139 to the extent that it is seeking to file additional papers or reconsideration of the Court's rulings on other motions.

[4] As an initial matter, Defendants moved to strike portions of Graciano's statement of undisputed facts.  D. 99.  Defendants argue that the statement of facts (1) improperly asserts facts without record support, id. at 2, and (2) improperly relies on legal conclusions rather than assertions of fact, id. at 6-7.  The Court DENIES the motion, D. 99, "as it is not necessary to reach the issue." McLaughlin v. Nat'l Grid USA, No. 07-cv-40118-FDS, 2010 WL 1379814, at *7 (D. Mass. Mar. 31, 2010).  Even considering Graciano's asserted "facts," he has failed to meet his burden under the summary judgment standard.

Graciano's opposition to Defendants' motion to strike was entered on the docket as a motion, D. 102, and, accordingly, no ruling on same is required. The Court, however, has considered this opposition in resolution of Defendants' motion to strike.

3

2019. D. 110 ¶ 17. Williams, the Vice President of Table Games at the time, id. ¶ 3, arranged for Graciano to work at Encore's recruitment office in Everett City Hall prior to starting as a Casino Services Supervisor. Id. ¶ 18. Defendants do not dispute that Graciano performed well during his time at Everett City Hall. D. 84 at 4 ¶ 6; D. 92 at 4 ¶ 6(c).

As a Casino Services Supervisor, Graciano was responsible for making sure the gaming tables were correctly closed, inventory of the casino chips was accurate and the customer ratings were entered properly into Encore's system. D. 110 ¶ 23. In June 2019, Williams assigned Graciano to the role of a Dual Rate Pit Manager, which involved certain shifts in which Graciano completed the responsibilities of a Pit Manager. Id. ¶ 19.

### A. Progressive Discipline Policy

Encore maintained a progressive discipline policy to address performance related issues. D. 111-17 at 2. Per the policy, "for most minor infractions, Encore will generally use the non-disciplinary procedures of coaching and counseling" prior to moving on to the progressive discipline process. Id. at 3. When an employee violates an Encore policy or procedure or performs poorly, the department may administer progressive discipline at the following levels: (1) level one written warning, (2) level two written warning, (3) suspension and (4) termination. Id. at 3–4. All disciplinary actions remain active for twelve months from the date of the incident. Id. at 3.

### B. Promotions

#### 1. Graciano's Disciplinary Record Prior to Promotion Consideration

Encore's surveillance department tracks movement within Encore to ensure compliance with the Massachusetts Gaming Commission rules and regulations and Encore's policies and procedures. D. 110 ¶ 8. On July 5, 2019, a surveillance department report described an incident where a patron got hold of Graciano's phone during a phone call with surveillance and attempted to convey information to the surveillance team. Id. ¶ 26. Surveillance advised Graciano that

4

employees never speak to a patron. Id. On July 27, 2019, Magee issued Graciano written discipline because of this incident. Id. ¶¶ 27, 29.

On August 14, 2019, Graciano allowed a player to split two Aces in violation of the Encore table games rules and he failed to inform his Pit Manager about same. Id. ¶ 31. As a result of this incident, Magee issued Graciano written discipline on August 18, 2019. Id.

### 2. Graciano's Candidacy for Pit Manager Position

In July 2019, Encore posted a position for a full-time pit manager, for which Graciano applied. Id. ¶ 35. Graciano interviewed for the position on August 14, 2024, the same day he allowed a player to split two Aces in violation Encore policy. Id. ¶¶ 31, 37. After the interviews, Williams requested that the assistant casino managers and casino managers review and rank a list of potential candidates for the position, but Graciano was not included on this list because he had active discipline. Id. ¶¶ 39–40. On August 23, 2019, Williams announced that Stephen Lai and Reginald Jones had received the promotion.[5] Id. ¶ 41. At the time of their promotion, neither Lai nor Jones had prior discipline. Id. ¶ 44.

In December 2019, Encore posted another position for a full-time Pit Manager, for which Graciano applied. Id. ¶ 46. Applicants like Graciano, who had previously interviewed in August 2019, were not interviewed again. Id. ¶ 47. On January 31, 2020, Williams announced that Travis Scafuri, Lisa Henderson and Robert Perry were selected for the promotion. Id. ¶ 48. None of these individuals had prior discipline at the time of their promotion. Id. ¶ 53.

It is uncontested that it was Williams's practice not to promote to Pit Manager employees with active discipline. Id. ¶ 58. For instance, Everett Olszewski ("Olszewski"), a White employee,

---

[5] Although Graciano claims the promotions were announced in August and December of 2020, respectively, D. 84 at 4 ¶ 6, the record establishes that the promotions were announced in August 2019, D. 111-16 at 2, and January 2020, D. 111-19 at 2.

5

was not promoted in June 2021 when he sought a promotion to Pit Manager because he had an active discipline. Id.

### C. Graciano's 2020 Disciplinary Records

#### 1. Mask Incident

On August 4, 2020, Williams received an email from Jenny Holaday ("Holaday"), the Executive Vice President of Operations, attaching a July 30, 2020 surveillance image of Graciano without his mask, in violation of COVID-19 protocols. Id. ¶ 75. Williams met with Graciano on August 5, 2020, and entered notes on Graciano's personnel record, which reflect counseling regarding the need to wear masks while inside Encore. Id. ¶ 78. On August 6, 2020, following a directive from Encore's Senior Vice President and General Counsel to discipline employees for not wearing masks, Graciano was issued written discipline. Id. ¶¶ 80–81.

#### 2. Record Keeping Errors

On October 3, 2020, a surveillance department report identified a recordkeeping error where video footage showed a customer leaving the gaming table with $10,000 in casino chips while the records reflected that she had left with only $1,000. Id. ¶ 88. As a result of this incident, Magee issued a written discipline, dated October 7, 2020, to Graciano, noting that Graciano needs to be more alert and accurate when supervising his section. Id. ¶ 90.

On October 22, 2020, Magee issued written discipline to Graciano for inaccurate accounting, namely for incorrectly documenting the value of grey cheques at a table bank as $125,000 instead of $145,000. Id. ¶ 105.

#### 3. Falsified Rating

On November 18, 2020, a surveillance department report described observation of Graciano inputting two false ratings to correct the rack. Id. ¶ 111. A false rating is a rating for a customer that did not accurately reflect the customer's play. Id. ¶ 113. It was Williams's regular

practice to issue progressive discipline when an employee entered a false rating. Id. ¶ 115. Graciano had two prior active disciplines at this time, namely the written warnings he received on October 7, 2020, and October 22, 2020. Id. ¶ 116. On November 18, 2020, Graciano was suspended pending an investigation. Id. ¶ 116; D. 111-50 at 2.

### D. Investigation and Termination

Stephanie Acevedo ("Acevedo") conducted the investigation into Graciano's false rating. D. 110 ¶ 124. On December 2, 2020, Acevedo prepared the draft report recommending Graciano's termination given Encore's progressive discipline policy. Id. ¶ 128. Acevedo first received notice of Graciano's allegation of discrimination on December 9, 2020, after she had concluded her investigation. Id. ¶ 132.

On January 11, 2021, Graciano filed a charge with the Massachusetts Commission Against Discrimination ("MCAD") and the Equal Employment Opportunity Commission ("EEOC"). D. 84 at 5 ¶ 1; D. 92 at 8 ¶ 1. Graciano's employment was terminated on January 21, 2021. D. 84 at 6 ¶ 3; D. 92 at 8 ¶ 3; D. 110 ¶ 134. On October 25, 2021, Graciano filed a second MCAD charge. Id. ¶ 138.

## IV.   Procedural History

Graciano filed this action on November 28, 2022. D. 1. Defendants moved to dismiss on December 30, 2022. D. 6. The Court allowed the motion to dismiss as to Counts III and VI with prejudice and as to counts I and II without prejudice so that Graciano could amend to substitute Encore as the defendant, D. 19, which Graciano did on May 18, 2023, D. 24. Both Graciano and Defendants have now moved for summary judgment. D. 84; D. 108. The Court heard the parties on the pending motions and took these matters under advisement. D. 135.[6]

---

[6] To the extent that Graciano seeks to supplement the summary judgment record with a proposed RICO complaint, D. 146, the Court DENIES that motion for at least the procedural reasons, D. 148 at 3, and pleading deficiencies, id. at 4-9, noted in Defendants' opposition.

## V.     Discussion

Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race . . . or national origin." 42 U.S.C. § 2000e-2(a)(1). Section 1981 prohibits racial discrimination in the making and enforcement of contracts. 42 U. S. C. § 1981. Because claims under Title VII and Section 1981 are "governed by an identical analytical framework," McLaughlin, 2010 WL 1379814, at *7 (citing Prescott v. Higgins, 538 F.3d 32, 40 (1st Cir. 2008)), the Court will consider these claims together.

Discrimination and retaliation claims under Title VII and Section 1981 are analyzed under the burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Joseph v. Lincare, Inc., 989 F.3d 147, 158 (1st Cir. 2021) (considering Section 1981 claim); Jenkins v. Hous. Court Dep't, 16 F.4th 8, 14 (1st Cir. 2021) (considering Title VII retaliation claim); Rodriguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 19 (1st Cir. 1999) (addressing Title VII discrimination claim) (citing Ayala-Genera v. Bristol Myers-Squibb Co., 95 F.3d 86, 96 (1st Cir. 1996)). Under this framework, the burden falls initially on Graciano to set forth a *prima facie* case of discrimination. See Stratton v. Bentley Univ., 113 F.4th 25, 38, 42 (1st Cir. 2024) (citations omitted). That is, he must show that he is a member of a protected class, that he met his employer's expectations, "he suffered an adverse employment action" and "evidence of a causal connection between his membership in a protected class and the adverse employment action." Joseph, 989 F.3d at 158. If he establishes a prima facie case, then the plaintiff is entitled to "an inference of discrimination, the burden shifts to Defendants to rebut such inference by "stat[ing] a legitimate, nondiscriminatory [or non-retaliatory] reason for the adverse employment action." Bonilla-Ramirez v. MVM, Inc., 904 F.3d 88, 94 (1st Cir. 2018) (quoting Burns v. Johnson, 829 F.3d 1, 9 n.8 (1st Cir. 2016)). If Defendants meet this burden, Graciano then "bears

8

the ultimate burden of proof to show that [Defendants]'s proffered nondiscriminatory [or non-retaliatory] reason for the adverse employment action was a pretext and that [Defendants] did intentionally discriminate" against Graciano based upon his membership in a protected class. Bonilla-Ramirez, 904 F.3d at 94.

### A.     Racial Discrimination (Counts I and IV)

The Court understands Graciano to be asserting discrimination claims based on Defendants' failure to promote him and the termination of his employment. Both parties move for summary judgment as to these claims.

#### 1.     Failure to Promote[7]

Applying the McDonnell Douglas framework to a failure to promote claim specifically, Graciano "must show that (1) he is a member of a protected class, (2) he was qualified for the position to which he applied, (3) he was not hired, and (4) an applicant with similar qualifications received the position." Henderson v. Mass. Bay Transp. Auth., 977 F.3d 20, 29 (1st Cir. 2020). For the purposes of the pending motions, Defendants do not contest that Graciano has established that he is a member of a protected class. D. 109 at 9 n.11. It is also undisputed that Graciano did not receive either the August 2019 or January 2020 promotion. See D. 111-16 at 2; D. 111-19 at 2.

Defendants contend that Graciano's motion for summary judgment must fail because he has not provided evidence to show that he was qualified for the position for which he applied. D. 91 at 8; D. 109 at 8. Graciano claims that he was qualified for the position because of his "35+

---

[7] Graciano's failure to promote claim hinges on Encore's refusal to promote him in August 2019 and January 2020. D. 110 ¶¶ 41, 48. The Court previously held that Graciano's Title VII claims based on acts that occurred prior to March 17, 2020 are time-barred. See D. 19. Accordingly, the Court addresses the failure to promote claims here only under 42 U.S.C. § 1981 for which the McDonnell Douglas burden shifting also applies.

years of experience in the casino industry and excellent performance . . . in the industry." D. 84 at 4 ¶ 6. It is undisputed on the record, however, that "active discipline" (i.e., written discipline issued within the prior twelve months, D. 109 at 2; D. 111-17 at 3) disqualified a candidate from promotion. D. 110 ¶ 58. It is also undisputed that at the time of promotion process in August 2019, Graciano had active discipline and that was true at the time of the January 2020 promotion process as well. D. 110 ¶¶ 27, 29, 31. That is, whatever Graciano otherwise claims about his performance, he was not qualified for the promotion given his disciplinary record at the time. Accordingly, the Court concludes that Graciano has failed to satisfy the *prima* facie showing as to these claims. See Prescott v. Higgins, No. 06-cv-10152-JLT, 2007 WL 9747642, at *4 (D. Mass. Aug. 27, 2007) (concluding that plaintiff was "unable to meet the second requirement for a prima facie case of race discrimination for his failure to promote claim because he ma[de] no showing that he was qualified for the position" beyond a "conclusory allegation" that he "met the posted qualifications").

 Even assuming *arguendo* that Graciano could establish a *prima facie* case and the burden then shifted to Defendants to rebut such showing, it is also undisputed Defendants have established that their decision not to promote Graciano was based on a legitimate, non-discriminatory reason, namely that Graciano had active discipline at the time of the two Pit Manager promotions. See Bonilla-Ramirez, 904 F.3d at 94. Again, it is uncontested that it was Williams' consistent practice not to promote to Pit Manager employees with active discipline. D. 113 ¶¶ 20–21; D. 111-11 at 3; D. 111-15 at 6. As the undisputed record also reveals, none of the individuals who received the promotions had active discipline. D. 110 ¶¶ 44, 53; D. 113 ¶¶ 23, 33. On the other hand, Olszewski, another employee who is White, was also not promoted to Pit Manager when he applied for the position in June 2021 because he had active discipline. D. 110 ¶ 58; D. 111-9 at 4. Given

10

this undisputed record, Defendants have borne their burden of showing that their promotion decisions were based on legitimate, non-discriminatory reasons.

Moreover, even reaching the shifting of the burden back to Graciano, where "unassisted by the original inference of discrimination," Mesnick v. Gen. Elec. Co., 950 F.2d 816, 824 (1st Cir. 1991), a plaintiff must show that the Defendants' reasons were pretextual, see Bonilla-Ramirez, 904 F.3d at 94, he has not carried that burden. "In assessing pretext, a court's 'focus must be on the perception of the decision maker,' that is, whether the employer believed its stated reason to be credible." Mesnick, 950 F.2d at 824 (quoting Gray v. New England Tel. and Tel. Co., 792 F.2d 251, 256 (1st Cir. 1986)). "It is not enough for a plaintiff merely to impugn the veracity of the employer's justification; he must 'elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive: . . . discrimination.'" Id. (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 9 (1st Cir. 1990)). Graciano has not carried this burden. Accordingly, the Court allows Defendants' motion for summary judgment as to Graciano's discrimination claim for failure to promote.

  2. *Termination*

To establish a *prima facie* case for race discrimination for his January 21, 2021 termination, Graciano must show: (1) he is a member of a protected class; (2) he was qualified for the employment he held; (3) he suffered an adverse employment action; and (4) evidence of a causal connection between membership in the protected class and the adverse employment action. Bhatti v. Trustees of Boston Univ., 659 F.3d 64, 70 (1st Cir. 2011) (citations omitted). As previously indicated, Defendants do not contest that Graciano is a member of a protected class. D. 109 at 9. It is also undisputed that Graciano suffered an adverse employment action, namely his termination. Id. at 12.

11

Defendants, however, contend that Graciano cannot satisfy the fourth factor because he has not shown that he was terminated because of his race. D. 109 at 12. In fact, Graciano notes that he was "terminated because of the allegations of false ratings." D. 84 at 6 ¶ 11. The only reference to race that Graciano raises in the context of his termination is that a White colleague did not face termination for similar conduct whereas he, who is Latino, was terminated. Id. at 6 ¶¶ 5–8. Although it is true that his White colleague was not terminated when she falsified ratings and instead was issued a level one memorandum, D. 113 ¶ 44, it also undisputed that this incident was his colleague's only active discipline. Id.; see Waleyko v. Del Toro, 719 F. Supp. 3d 184, 190–91 (D.R.I. 2024) (concluding that the plaintiff has failed to state a claim for discrimination because the comparators he discussed in the complaint were not similarly situated). Graciano, on the contrary, already had prior discipline at the time of the discipline for the November 2020 false ratings. D. 113 ¶ 46. Given this record, Graciano has not satisfied the fourth prong of the *prima facie* showing.

Even assuming *arguendo* that Graciano had established a *prima facie* case of racial discrimination, Defendants have articulated a "legitimate, non-discriminatory reason" for Graciano's termination. Bonilla-Ramirez, 904 F.3d at 94. Pursuant to Encore's progressive discipline policy, when an employee's disciplinary record reveals level one and level two written warnings for performance issues, the next levels of discipline are suspension and then termination. D. 111-17 at 3. As Defendants have undisputedly shown, at the time Graciano was found to have falsified ratings, he had already received written warnings in the preceding months. See D. 111-31; D. 111-34; D. 111-44; D. 113 ¶ 46. After the falsified ratings, Graciano was suspended pending an investigation. D. 110 ¶ 116. After the investigation, Acevedo and Employee Relations recommended termination "[b]ased off progressive discipline and the multiple incidents." D. 111-53 at 4. As with his failure to promote claim, Graciano likewise has not shown that Defendants'

12

proffered reason for terminating him was pretextual. Bonilla-Ramirez, 904 F.3d at 94. Accordingly, the Court allows Defendants' motion for summary judgment on Graciano's racial discrimination claim arising out of his termination.[8]

## B. Retaliation (Counts II and V)

To make a *prima facie* showing of retaliation, Graciano must "must establish that: 1) he engaged in a statutorily protected activity, 2) he suffered an adverse employment action, and 3) the protected conduct and adverse employment action are causally connected." Toussaint v. Brigham and Women's Hosp., Inc., 166 F. Supp. 3d 110, 117 (D. Mass. 2015) (quoting Pina v. Children's Place, 740 F.3d 785, 801 (1st Cir. 2014)).

The Court understands Graciano to be raising a retaliation claim based on his filing of an MCAD complaint and his complaints about management. The Court analyzes the two bases for this claim separately.

### 1. MCAD Complaint

The first element of the prima facie analysis asks whether Graciano engaged in protected conduct. Protected conduct "refers to action taken to protest or oppose statutorily prohibited discrimination." Fartini v. Salem State Coll., 557 F.3d 22, 32 (1st Cir. 2009) (quoting Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000)). The undisputed record shows that Graciano filed an MCAD complaint on January 11, 2021, D. 84 at 5 ¶ 1; D. 92 at 8 ¶ 1; D. 111-59 at 7–8, which constitutes protected conduct. Connolly v. Woburn Pub. Sch., 659 F. Supp. 3d 92, 112 (D. Mass. 2023). It is also undisputed that Graciano was terminated on January 21, 2021, D. 84 at 6 ¶

---

[8] To the extent that Graciano also presses a hostile work environment claim, D. 24 ¶¶ 9, 13, 43, he has failed to establish a *prima facie* case which requires, among other things, requires that any alleged race-based harassment "was so severe or pervasive as to create an abusive work environment." Prescott, 538 F.3d at 42. Even considering the three comments alleged, D. 24 ¶¶ 9, 13, 43, they are not sufficient to meet the demanding standard of severe or pervasive harassment. Tombeno v. FedEx Servs., Inc., 284 F. Supp. 3d 80, 89 (D. Mass. 2018).

3; D. 92 at 8 ¶ 3; D. 110 ¶ 134, which is an adverse action. See Surprise v. Innovation Grp., Inc., 925 F. Supp. 2d 134, 146 (D. Mass. 2013).

Graciano, however, has not shown a causal connection between his filing of the MCAD complaint and his termination. "Absent special circumstances not present here, an adverse employment decision that predates a protected activity cannot be caused by that activity." Muñoz v. Sociedad Española De Auxilio Mutuo y Beneficiencia De P.R., 671 F.3d 49, 56 (1st Cir. 2012) (citing Sabinson v. Trustees of Dartmouth Coll., 542 F.3d 1, 5 (1st Cir. 2008)). "This is also true . . . when the adverse employment decision was contemplated but 'not yet definitively determined' before the protected activity took place." Id. (quoting Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 272 (2001)). Although Defendants did not terminate Graciano until January 21, 2021, D. 92 at 8 ¶ 3; D. 110 ¶ 134, after Graciano filed his MCAD complaint on January 11, 2021, D. 84 at 5 ¶ 1; D. 92 at 8 ¶ 1, the undisputed record shows that Defendants had already been contemplating this adverse employment decision. Given his prior disciplinary record, termination for his November 2020 conduct was contemplated under the progressive discipline policy. D. 110 ¶ 116. After his suspension and the ensuing investigation, Acevedo recommended that Graciano be terminated in a draft of the investigation report on December 2, 2020. D. 110 ¶ 128; D. 111-53 at 4. The undisputed evidence, thus, shows that Defendants were contemplating the decision to terminate Graciano before he filed his MCAD complaint on January 11, 2021, and, in any event, the undisputed record further shows that Defendants did not receive notice of any plans by Graciano to file with the MCAD until after the completion of the investigation had been completed and termination was recommended. D. 110 ¶¶ 131-32, 136.[9] Accordingly, Graciano cannot show that a causal connection exists between the adverse employment action and the protected conduct.

---

[9] Even if the December 9, 2020 email from Graciano's attorney, D. 111-55 at 3–4, provided notice of Graciano's allegations of discrimination or the forthcoming MCAD complaint,

14

Even assuming *arguendo* that Graciano has established a *prima facie* case of retaliation based on his filing of the MCAD complaint, Defendants have articulated a legitimate, non-retaliatory basis for their decision to terminate Graciano's employment, namely his record of repeated disciplinary matters warranting termination under the progressive discipline policy. D. 91 at 14–15; D. 109 at 18–19; see Calero-Cerezo v. U.S. Dept. of J., 355 F.3d 6, 26 (1st Cir. 2004). Moreover, because Graciano has shown that this articulated reason is pretextual, the Court allows summary judgment as to Defendants' retaliation claim on this basis.

### 2. Complaints about Management

To the extent Graciano claims retaliation based on his complaints regarding favoritism in management's employment practices,[10] he cannot establish a *prima facie* case of Title VII retaliation on this basis. As a general matter, "a complaint of general misconduct by a supervisor, unrelated to a complainant's race, color, gender, religion, or national origin, is not activity protected by Title VII." Burns v. Johnson, 18 F. Supp. 3d 67, 73 (D. Mass. 2014). Here, Graciano reported "favoritism" in the casino. D. 110 ¶¶ 64–65; D. 111-1 at 36. Specifically, he explained that managers were giving preferential treatment to their spouses. Id. Acevedo followed up with Graciano about this allegation, and Graciano described that managers "had honored Supervisor positions to their family, friends and/or significant others." D. 111-24 at 2. Such evidence, however, does not connect his claims of favoritism with any allegations of Title VII discrimination,

---

Defendants had already contemplated termination prior to receipt of same, see D. 111-53 at 3–4, and thus does not show the causal link.

[10] In July 2020, Graciano raised concerns about favoritism around hiring of management's spouses who then received favorable treatment. D. 110 ¶¶ 64–65. Acevedo commenced an investigation into his allegations of favoritism. Id. ¶¶ 68–69. Upon the conclusion of the investigation, Acevedo found that the allegations of favoritism could not be substantiated. Id. ¶ 69.

race-based or otherwise. Accordingly, Graciano cannot establish a *prima facie* case of retaliation on this ground.[11]

## VI. Conclusion

For the foregoing reasons, the Court DENIES Graciano's motion for summary judgment, D. 84, and ALLOWS Defendants' motion for summary judgment, D. 108.[12]

**So Ordered.**

/s Denise J. Casper
United States District Judge

---

[11] Given the Court's ruling on the merits, the Court need not address Defendants' alternative arguments for summary judgment. D. 109 at 4.

[12] Given the Court's allowance of summary judgment for Defendants, the Court DENIES Graciano's motion for "consolidation," D. 141, 144 as moot, and DENIES his most recent filing for declaratory judgment, D. 157, as moot.